20-1400, et al., National Treasury Employees Union Petitioner v. Federal Labor Relations Authority. Ms. Bailey for the petitioners, Ms. Osborne for the respondent, Mr. Busa for the interviewer. Thank you. Mr. Bailey? Ms. Bailey, sorry. Thank you, Your Honor. Good morning, and may it please the Court. My name is Katherine Bailey. I'm with the National Treasury Employees Union, and I'm here today on behalf of the three petitioner unions. In the two-to-one decision below, the Federal Labor Relations Authority stated for the first time that agencies can enforce new regulations on contracts extended by continuance provisions. These provisions, bargained for by the parties, excuse me, keep agreements in place pending negotiation of a new contract. The Court should set the decision aside for three separate reasons. First, the decision conflicts with the plain language of Section 7114C of the Federal Labor Relations Statute, which governance agency had reviewed. Second, the decision conflicts with the plain language of Section 7116A.7, which prohibits the implementation of new regulations while an existing agreement is still in effect. Each of these statutory conflicts alone requires the Court to set the decision aside. Third, and finally, it was arbitrary and capricious for the authority to issue a policy statement at all for the reasons set forth in our briefs. Starting with my first point, Section 7114C, the statute provides for agency head review upon the execution of a new agreement, an agreement extended by a continuance provision. Can I ask you a question? So your argument is that this opinion here is invalid as a matter of law because it conflicts with the statute. And so if that's the case, and if we were to rule in your favor, does that mean that the FLRA's longstanding rule on rollover contracts would also be invalid and inconsistent with the statute? No, you're not. Is there any way to distinguish those as a legal matter? Yes, our position is consistent with ARME, the longstanding FLRA decision, and that's because of the differences between rollover provisions on the one hand and continuance provisions on the other hand. Under a rollover provision, the contract is automatically renewed, and under a continuance provision, the contract is extended only until renegotiations are complete for the next successor agreement. Why is that a difference that matters as a matter of law? Well, in the continuance provision contract, looking at the statute, in a rollover situation, the contract is essentially being, when it's renewed, it is executed for a new term. And nothing is left to be done for the new term to go into effect. That's why you could say there's an execution in that scenario. Is that true of a continuance as well, though? Because once a party asks for renegotiation, the contract extends, I mean, for an indefinite period, but it still extends past the end date. I think what's important there is that it's the same agreement as the parties have bargained for. They've bargained for it to continue only until the new agreement is in effect. Oh, a rollover clause also has the same agreement remaining in effect, just for a new term. While the language may be similar, I think it's important to look at what's going on in a broader context. And in a continuance scenario, the parties are renegotiating their agreement. And so they're working on a successor agreement. And the continuance period lasts only until that successor agreement is in place. Sure. In one situation, the extended term is typically for a fixed duration. In the other, the extended term is for an indefinite amount pending negotiations. But the question in both contexts, which may be a little bit metaphysical, but the question is whether the parties are still under the original agreement once the term is extended. Yes, and the parties have bargained in a continuance provision scenario to be, in fact, under the same agreement. That's what they anticipated when they included the continuance provision in their contract initially. Why aren't they under the same agreement in the rollover context when the agreement extends by operation of the original contract? It goes to the difference between renewal on the one hand and extension on the other hand. And a renewal sets up a new term, which is treated as a new agreement. Has any court, this court or any other court, upheld the FLRA's interpretation of rollover provisions in the Army case? Not to my knowledge, Your Honor. I guess that's longstanding FLRA, but it's not yet been reviewed by a court. You don't challenge the consistency of the rollover rule with the statute? That's correct, Your Honor. We are not asking the court to overrule Army. We are explaining why this scenario is different than Army, than rollover provisions. For these purposes, you take as given that the rollover provision, the rollover, the body of law asserting Army on rollover provisions is lost. Yes, that's correct for the purposes of this argument here today. Another thing I'm curious about is, this statute's been in effect a long time. These continuance provisions are not a new, nothing new, there's nothing novel about them. But neither brief tells me what the practice was before this general rule came into effect. I'm assuming the practice was that there was no agency head review for continuance provisions. And the FLRA cites cases of inconsistency, but I think those are all rollover cases. So what was going on with their cases? Were they also inconsistent with continuances? Or was there consistent practice beforehand? Or nobody knows? My understanding, Your Honor, is that when an agreement included a continuance provision, all of the parties would treat that agreement as continuing, consistent with our arguments here. And it's important to note that continuance provisions are completely optional. So some agreements, the parties bargain to include them, and other agreements, they don't. So they've been included in contracts. I get that not every contract has them, but they've been included in contracts for a long time, or is it kind of a novelty? For a long time, as far as I know, Your Honor, yes. Since sort of the beginning of the statute? Yes. And were no FLRA decisions addressing this with the nature of a continuance provision once prior to this general rule? Your Honor, I don't know of any FLRA decisions addressing continuance provisions specifically. So I guess that means you're also not aware of there being any cases where the FLRA or an agency tried to enforce new rules and regulations during a continuance period, and a party challenged that. Yes, Your Honor. To our knowledge, all of the decisions related to 7116A7 and new regulations are about rollover provisions, not continuance provisions. What does the statute tell us about whether the agreement is the old one or a new one under these circumstances? And I'll give you a hint. I think the answer is next to nothing. I think that's mostly true, Your Honor. I think you have to incorporate the continuance provisions themselves and what you can glean about the party's contractual, excuse me, contractual intent consistent with the statutory scheme. If the statute says very little, why wouldn't that be a strong case for deferring to the agency? Well, first, I think all of the tools of statutory interpretation are available to determine first whether the statute is ambiguous or not. Even if the court doesn't agree with us on Chevron Step 1, the authority's interpretation is unreasonable, and the court doesn't defer, excuse me, to unreasonable interpretations. But you just conceded, I thought, that the statute is silent on this question. So how do we then get the statute unambiguously resolves the question in your favor, and in any event, the agency's view is unreasonable? I didn't mean to say that the statute is ambiguous or that there's a gap to fill. I think when you look at the tools of statutory interpretation, you can look at the plain language of the provisions, which state that in 7114C, you need an execution in order to have agency head review. And under 7116A7, if an existing agreement is still in effect, which it is here, then new regulations that are in conflict cannot be unilaterally enforced. You need an execution. That's a textual clue, no doubt. But executions just happen when a contract is finalized, correct? So we're just back to the question of when a party does what's necessary to extend the term in the extension clause, which is register the objection and trigger the renegotiation, does that act create a new contract, in which case there is an execution, or is all this happening under the old contract? It's all happening. Excuse me. Sorry. So we're just back to where I started. Well, it's all happening under the old contract, but you can use the meaning of execution, including under the FLRA's case law, to understand why that is. Under the FLRA's case law, including the old Army case, an execution occurs when there's nothing left to be done for a new agreement. And here, in a continuance provision context, the parties are renegotiating the successor agreement. Ms. Bailey, we want to assume that the statute is ambiguous. What are your arguments for why this is an unreasonable interpretation? The interpretation... Sorry, I didn't mean to speak over you. The interpretation is unreasonable because the authority relies on the policy rationale that contracts require fixed end dates, presumably a calendar date is what I understand them to be saying. When a continuance provision goes into effect, it's undisputed that that continuance period itself does not have a concrete date. The date that it ends is when the parties execute the successor. So the policy rationale is inconsistent, and the authority has not addressed that aspect of their reasoning. I think I'm almost to my rebuttal time. I'm not sure if the court has any other questions at this moment. Do my colleagues have any more questions? Okay. Thank you very much. We'll hear from Ms. Osborne now. Thank you, Your Honors. May it please the court. My name is Rebecca Osborne, and together with Noah Peters, I represent the Federal Labor Relations Authority in this matter. The authority reasonably issued the policy statement because it was necessary to clarify how agency head review and the enforcement of government-wide regulations occur within the state. It was necessary to clarify that because the statute is silent on these two issues. What has been the practice before this? With respect to continuance provisions? Continuance provisions only. Only. Your Honor, the U.S. Department of Agriculture actually had requested this policy statement because... That's not my question. No, because the things that are cited in there are rollover. There was an inconsistency, as I saw it, on this issue. It was on rollover issues. But what they were saying was that arbitrators were relying on those cases to make different decisions with respect to continuance provisions, and that's why USDA was... Were they able to cite an arbitrator decision involving a continuance clause that was... They did not, Your Honor. They didn't cite any arbitrator decisions that were inconsistent. Are you aware of any arbitrator decisions that are inconsistent? I'm not, Your Honor. So as far as you know, the consistent practice for decades before this general rule was that there was no agency head review when a continuance provision came in. Your Honor, I have no evidence either way on that. I was completely ignorant of how that happened. Excuse me? Debra Lurie was completely ignorant of how continuance provisions were being applied when agency head reviews began? Your Honor, we were told by the agencies that there were... That arbitrators were interpreting this in different ways. More than one agency? I definitely know that the US Department of Agriculture said... That's when they asked for this general rule. Were you told any time before that? No, Your Honor. No one was complaining about a continuance? No one was complaining about the authority's decision. And the authority's decision to issue this rule, though, this policy statement was consistent with the decision that it made with respect to rollover provisions. And the policy goals in both cases are the same. The authority was attempting to balance both the need for at the same time ensuring that those terms eventually were brought into conformance with government-wide regulations. And actually, there was a decision... I'm sorry. Yes, Your Honor? Sorry, did one of you have a question? No, I was going to mention a subsequent case. Okay, then I will... I saw one of my colleagues had a question, so I just want to speak over them. So one of the things that the FLRA decision talks about a lot is that contracts need to have, I think in their word, unambiguous, knowable, effective dates and durations. Does that mean it has to be a calendar date or can an event be what triggers the end of an effective period? Okay, so you could have a contract that would say upon, instead of saying it ends on March 31st, whatever year, it would say upon X is that this contract. Yes, Your Honor. Administration or whatever. Yes, Your Honor. All righty. Some of the contracts I've looked at, most of the times these continuance provisions are part of the definition of the duration, right? It will say it expires on X date, but if someone is asking negotiations in advance and they are still ongoing, then it will continue until there's a new collective bargaining agreement. Yes. So that sounds like it has a very concrete, knowable, unambiguous termination date when there's a new CBN. Well, Your Honor, but that interpretation doesn't give any weight to the portion of the agreement that says this will expire on X date and then will continue. That's what I'm just telling you. You just said that it can expire on a date or on an event. And what I'm telling you is that we have to do this without any contracts in front of us. That was the FLRA's decision to go this route. But there's lots of contracts as a matter of public record that show that these continuance provisions are part of the definition of the term of the contract. And so it seems like it's actually giving full effect to the term provisions and contracts if the continuance provision is part of the termination or duration clauses. In fact, it seems if you say that's not, that that event is not the termination date, it seems it's rather rewriting the provision of the original contract. So I'm having trouble grappling here with what the FLRA was saying. In the example that you just gave, there are two termination dates. One is the expiration of the contract and the other one would be the end of continuance. What do you mean there's two? There's not two, there's one. But they said it'll be March 31st or upon the conclusion of a collective bargaining agreement, whichever comes later. Is that two termination dates or one? That would be two termination dates. That's two termination dates if they say it's on this date or this event, whichever comes later. There's two termination dates? That sounds to me like one termination date. But your honor, there is an expiration date and then there is the conclusion. The party can't contract for this date. Would you agree as they said it'll be March 31st? Or when the agency has, when the agency, some event happens in the agency, right? So when the agency finalizes a new workplace policy, you would say that's two in there? Yes, yes. Is there any principle of contract interpretation that you can point to that says that's how we would read a provision that said it terminates on this or this, whichever comes later, as two terminations? One termination and then a second termination? Any case that's ever held that? Your honor, what the authority is attempting to do in this context is to reconcile. I'm not asking that. My question is more basic about just basic contract law, federal contract law, whatever you want to point to. Is there any case that has said when you have a termination date that says it'll be A or B, whichever comes later, there's actually A is a termination date and B is a termination date. There's two terminations. If you are talking about the termination date being on an or, as opposed to there is an expiration date and then it will be on. I'm saying that if you're talking about or, where there is a termination date. Well, isn't that exactly what these provisions mean? It'll terminate on this date unless contract negotiations are ongoing, at which point it will continue until they're done. If there's continuing contract negotiations, when negotiations are done. It's still or. Well, actually, the or would be the operative term in the example that you just gave. A lot of these provisions talk about an effective date and then the period will be extended to another date. If they had a but instead of an or, they had to extend on this date period, but if negotiations are ongoing, it will extend until this time, but would work just as well. It would depend upon the language of the specific contract. So, it sounds like it's hard then to figure out whether these continuation provisions actually trigger a whole new contract without knowing what contract says. Well, no, Your Honor. What the authority did was issue a general policy statement and it actually has applied this in a specific case after briefing was done in this matter. So, if you look at U.S. Department of Veterans Affairs 72 FLRA 287, which was issued on May 21st, 2021. Is that cited in your brief? It is not. It is not cited in the brief because it was issued after briefing was done in this matter. It didn't do a 28 day letter or do I know that your opponent knows about this case? I haven't. My colleagues do, but I don't know anything about this case. No, Your Honor, we did not. But in that case, the authority said that a continuance period, there was a contract with a continuance period. Following the start of the continuance period, government-wide regulation had come into effect. The authority said that the agency could not enforce that regulation because it came after the start of the continuance period. Isn't that inconsistent with the policy statement? No, Your Honor, because if the policy statement says that if a government-wide regulation, it comes into effect before the execution or beginning of the continuance period, then it can be enforced. But if it comes into effect after, it can be enforced. Can I ask you a question, Ms. Osborne? So, most of the briefing treats the two provisions 7116A7 and 7114 kind of together. And I was just wondering if there is, or if the FLRA has thought that perhaps those two provisions might apply in a different way to continuance contracts. Like, for instance, maybe a continuing contract is not executed when the continuing period starts, but the original contract is no longer in effect. So, maybe there's some space. I mean, maybe you don't get agency head review at the start of a continuing period, but an agency could enforce rules and regulations that had come into effect during the contract term. I just wonder if there's, like, any space between the two provisions or how they could be understood or if they must be understood in tandem. I think that the authority considered those two provisions in tandem, whether or not it had to that way. The standard under Chevron is not whether or not this is the best decision, but rather whether this is a reasonable one. And I think that execution is when nothing further needs to be done to set the terms. And in a continuance period, you're talking about a universe of terms. There is no negotiation concerning the terms during a continuance period. The negotiations are happening as to the successor agreement, not to the contract that is the successor period. And so, that, and as far as in effect, the terms of the successor period would be in effect during that time. Let me ask you a slight variation on Judge Millett's theme, which is your position is that in the period of extension, the parties are under a new contract. But as a matter of basic contract law, you can't have a contract without agreement. And the only agreement I can see is the original agreement in the first collective bargaining agreement, because what triggers the extension in the continuance context is the unilateral action of one of the parties, which gives notice and says, we don't like the contract and we want a new one going forward. There's no second agreement there. So, how can there be a different contract? Well, again, this is similar to the rollover context where there is a unilateral, there- I'll get there in a second, but just try to help me in the continuance context, which is what's before us. Yes. Well, the terms of the agreement during the continuance period are set, and those terms have been agreed to, and they are also implicitly agreed to going forward when the parties fail to conclude negotiations on a successor agreement by the time that the termination of the initial agreement happens. I'm sorry, what's the second agreement? What gives rise, what creates the second agreement? Just the fact that they have failed to conclude negotiations on a successor agreement. That sounds to me like the absence of agreement, not a second agreement. Well, but there has already been an agreement that those terms of the initial agreement will continue until the parties finish the successor agreement. So, those terms are already set, and by failing to conclude negotiations, the parties have agreed that they're going to abide by these terms that are predefined until they reach a successor agreement, and that agreement can take place over the course of years. And part of this- Go ahead. I'm sorry. I think I understand. I'm not sure I heard a second agreement, because you said, well, everything was preset, which is right, but it was preset in the original contract. But we're talking about a new term of the agreement. So, you've passed the express term of the initial agreement, and so we're talking about a new term of the agreement, which is the continuance term. And then I suppose that loops us back to Judge Millett's point, which is that may just be the later of the two possible expiration dates. It depends on the terms of the contract, Your Honor. But part of- It depends on the terms of the contract. That's not a great answer for you in the context of contract provisions before us. Well, I think, Your Honor, though, that it is a broad principle that can be applied when you are talking about contracts where there is an expiration date, and this hinges, the decision hinges on there being an expiration date in a contract with a continuance provision that then is extended. And you're talking about a new term of the agreement. You have to, the thing is that you have to give meaning to the- Just to be clear though, you said if the natural reading of the contract language is that the expiration date was A or B, whichever occurs later, this rule wouldn't apply. So, it's only in some situation where the fair reading of the contract provision does not have a sort of A or B, whichever comes later, reading. You're only talking about that subset of cases with this general rule. I think that's correct, Your Honor. Can I ask you- Go ahead. Sorry. No, but I'm sorry. I missed something earlier. Your position is that this guidance does not apply to the category of contracts that are described by A or B. The duration of the first contract is until A or B, whichever is later? Yes, because there has to be an expiration in a contract in order for a new term of the contract. Yes. So, your guidance does cover? The guidance covers contracts where there is an express expiration of the agreement. Where does the guidance cover a contract which says this remains in effect until December 31st, 2021? And then after it's extended. Unless by June 30, 2021, a party gives notice of a desire to renegotiate, in which case the term, in which case the contract will remain in effect pending negotiations. Does your guidance cover that or not? Your Honor, I think what the guidance covers is when there is an identifiable expiration date. Then the contract will extend beyond that expiration date. Why does that matter for your position? I guess I don't understand why that would make any difference. Whether it was an A or B type of clause, and then a continuing period began, or it was just a date certain. In either event, there is a term of the contract, and then there's a new continuing period. So, I'm not sure why there would be any difference under all the other reasons you stated for your argument. Yes, Your Honor. We are talking about the term of the agreement, and following the term of the agreement, there would be an agency head for view in the enforcement of government-wide regulation. On your position, would it matter what brought about the end of the term? I mean, that would just be a particular contract. It would not matter what brings about the end of the term. There would be an expiration of the term in the beginning of a new term of the agreement. It doesn't matter which of the A or B clauses, but if the provision is fairly read as A or B, whichever comes later, then only the later date would be the expiration date. I think, Your Honor, if it sets the term, when you set the term of the initial agreement, and then you begin a new term of the agreement... I don't understand what that means. I'm asking you exactly what that means. If we set the original expiration date, the original term, it expires on date A, or event B, whichever comes later. In that case, it doesn't end. You don't care if it's A or B, but either A or B, whichever is later, is going to be the end of that contract. Nothing new can start until that point. It would end at the term of the initial contract, and then would begin a new... The term initial contract in A or B, whichever comes later, is whichever comes later. Is a new term. Yeah. Whichever comes later is not a new term. Whichever comes later is the end of the first contract. I think, Your Honor, that we're talking about two different terms of the agreement. One is the initial term. No, no. I'm telling you exactly what the term of my contract is. I look at a contract, and I say what its duration provision means, and that it expires on calendar date A, or on event B, whichever comes later. That's how the contract is read. That's what the party's intended. That's how the contract is read under basic contract principles for meeting contracts. That's what I'm getting. I'm just trying to clarify, because I'm getting... I thought you reconfirmed that position to Judge Katz's, but now I'm concerned that maybe I misunderstood something. When you have an A or B, whichever comes later, and that's how we know when the contract ends. Contract term ends. It's going to be whichever comes later. It would depend upon when the expiration date is and how... I told you the expiration date is whichever comes later. I'm just trying to get you to agree that if the expiration date is whichever comes later, then the expiration date is whichever comes later. That would be correct, Your Honor. I mean, that's... I mean, that is going to make your guidance apply to almost nothing. I mean, I've looked at a handful of these agreements, which I don't know for sure, but I assume they're representative. Let's just take one to be concrete. All right. This is a CDC agreement. It says... It gives the term of the agreement, and then it says if either party gives notice of an intent to terminate or renegotiate, has a time date for that, and then the provision says if renegotiation of the agreement is in process but not completed upon the expiration date of this agreement, this agreement will be extended until the renegotiations have been completed. Does your guidance cover this CDC provision? Yes, Your Honor, it would, because under the terms of that agreement, you're talking about an expiration date and then an extension of that, so that you're talking about one term of the agreement followed by a second term of the agreement because it has to give effect to the expiration, the fact that there is an expiration date in that agreement. And you think that the specific contract provision that I just read you is dispositively different from Judge Millett's hypothetical contract provision of A or B, whichever is later? Yes. Yes, Your Honor, because the terms are different. In the contract that you just talked about, you have an expiration date of that agreement, and then there is a new term when you're talking about an extension beyond that. That is fundamentally different. Different words. Is it any different in meaning? Yes, it is, Your Honor. It is different in meaning. What evidence do you have that both parties agree when writing a provision like that, that the contract actually ends and a whole new contract begins? They use words like remain in effect or continue in effect. That's the language that I've seen, which sounds very much like the old one keeps going and not a new contract. The same language is used in the context of rollover. We haven't availed your rollover provision interpretation, so I don't know where that's getting you. We don't have briefing on that here, so I don't know that that adds anything to this dialogue, although I think, as Judge Katz has pointed out, contract law has long grounded the distinction between Evergreen provisions and status quo provisions. So, just put that aside and answer me. It's not a plain contract, ordinary contract principle. It's not a plain contract. It's not a plain contract because you can say some parties say the contract will expire here or upon X event, it will remain in effect until X. So, that means an entirely new contract is starting. It means that an entirely new contract is starting because you've had one term of the agreement and then you're going to have another term of the agreement. That all depends on you reading that provision as it expires X. Negotiations are going, we'll start a new contract that begins on X plus one, but if those provisions are fairly read, as Judge Katz has indicated, as it will expire on X calendar date or if negotiations are ongoing on this event, completion of a new CBA, whichever comes later, you lose. Well, the thing is, Your Honor, that the expiration date and the fact that there is an expiration date in that agreement has to be given meaning. If you ignore the expiration... No, it doesn't. No, because I think that's the whole question here. You're assuming that the first calendar date is the expiration date. And my question to you is, if the provision is read as instead, that the expiration date is A or B, whichever comes later, then you can't say there's one expiration date we have to give effect to. You have to give effect to their contract expiration date, which is A or B, whichever comes later. Well, but in the example that Judge Katz has gave, we are talking about an expiration date and then an extension afterwards, which indicates a new term of the agreement. And that new term of the agreement could go on for years. Do you know how... And there also is the policy consideration... Sorry, before you get to that, but do you know how... I just haven't been able to find out. This is not the only labor law statute in the federal domain. Do you know whether under the NLRA, which will contract collective bargaining agreements and have these types of continuation provisions, or government contracts, like military contracts or expending contracts, any of that, do you know how these interpret... Is the FLRA's interpretation consistent with, different from, or you have no idea how it's interpreted in those contexts? Your Honor, I am not certain and I don't want to give an opinion because I can't give anything off the top of my head. Do you know if the FLRA's interpretation here is just consistent with general basic contract principles? Yes, Your Honor, but it's also consistent with the statute and one of the... Can you tell me what... I asked you about general contract principles. Do you have cases that you can cite or treaties you can cite that tells me that what the FLRA did is consistent with how contract law is interpreted just generically in the common law? I can provide you with an additional case law on that. Okay, but you're confident that it's consistent with what you said it is? I believe it is consistent, Your Honor. A lot of these hypotheticals get to... There could be obviously a range of different types of continuous clauses and I'm wondering, I mean, presumably the FLRA in any particular case when an agency tries to enforce rules of regulation during a continuing period, if those are charged as unfair labor practices, those would be each considered the individual facts and circumstances of those contracts. That is true, Your Honor. In each one of these cases, for enforcement of this policy statement to happen, the case would need to be assessed on the facts of the case. Thank you. Any further questions? Okay, thank you. It took you a long time, Ms. Osborne. Thank you for your time. Thank you, Your Honor. Ms. Busa? Good morning and may it please the court, Joe Busa on behalf of the intervenors. Did I say it right? Busa, you said? You did, Your Honor. Yeah, that's exactly right. It's pretty rare to get it right, but you nailed it. Well, I hope I don't do that this morning. I'm here on behalf of the intervenors. As you know, that's the U.S. Department of Agriculture and the Office of Personnel Management. I think it would be most fruitful to step right in on what's occupied most of the discussion this morning and that is the question of the relevance of the specific contract language to the authority's determination here. I just want to emphasize that the common law of contract really has nothing to say about the statutory effect of the beginning of a new term after the prior end date of the prior term was reached. The parties can set... So let's start with background contract law principles because I didn't research this extensively, but I did find contract law 101 provisions suggesting that renewal and extension are both terms of art in contract law and the difference between them is precisely that an extension extends the original contract and a renewal creates a new contract. I believe that's the normal usage of those terms in the common law of contract, your honor. However, here what we're dealing with is a special statutory understanding of that term. We're dealing with the effect of... I'm sorry. Sorry, but why is that? Because you're right that the reason you... the reason everyone cares about this question, whether we are in a situation like this, whether we're operating under the first contract or under a second, a new one, is because two legal consequences specified in the statute flow from how you answer that intervening regulations. But the question, the statutory question of what legal consequences flow from how you answer that question is different from the antecedent question of whether it's an... whether or not it's a new agreement. And on that question, the statute seems to me that means the FLRA can give a count... well, whether agreement means agreement as understood at common law, in which case you lose, or whether agreement, because it's not defined in the statute, the FLRA can adopt an anti-common law understanding, in which case you win. That's the... I think that's how I understand the question. So I think that's a correct way of understanding the question, and I would point you to some specific textual indications in the statute that actually the statute contemplates treating an term. So specifically, I think the best example of that is in 7-119-C5C, says that the impasse's panels imposed settlements shall last, quote, during the term of the agreement. And so I do think that what we're dealing with here is... Doesn't that beg the question of what the term is? If you have... if the term... if the parties contract for an A or B, whichever comes later term, that statutory language would give effect to that contract, correct? Whichever later comes. So I think it rams the question of the term. No, no. Stop. Hang on. I want to make sure we're clear and we're talking about this thing here. Okay? So my hypothetical is what the parties have come to a meeting of minds on is that the duration of this, the defined term of our agreement is A or B, whichever comes later. You would agree, then, that the use of the term... use of the word term there in C... 7-119, sorry. Did you say it's A? No, it's C. Whatever the provision you're talking about. Sorry, I didn't get that. Could you just repeat the slide? I did 7-119, C-5-C, I believe. Okay. Thank you. My bad vision won't go back fast enough on all these numbers. The use of the word term there would be the term as defined by the parties in the contract, your collective bargaining agreement. So I guess one clarifying question about that is B, another specific date, or is it an event whose date can't be known? Does that matter? I think it actually might, and for the following reason. There's very strong practical incentives for parties to have fixed calendar date end dates for their terms. That's because under 7111F, there's a procedure, I believe, for challenging whether a specific union should be the exclusive representative for a bargaining unit, but there's a safe harbor provision. If you have an agreement in place with a specific fixed end date, that creates a calendar by which to challenge. I guess this is all the same language. I see you're pointing to language, but I don't know why that's an issue, whether it's a specific event or a calendar date. Well, I think because it's a concrete termination date that they have agreed to. Is there anything in contract law that says if the termination date of a contract is a concrete predefined event, that's a disfavored term for agreement rather than a calendar date? I don't think. I don't think there's a principle of the common contract. I also don't think. Are you aware of any case, though, under the NLRA, under government contracts, under general contract law, that is said if you have an A or B, A calendar date, B event, whichever comes later, that the A calendar date is favored even if it's a later one? I'm not aware of a case in the general common law of contracts, Your Honor, but again, I don't think that's a concept here at all. Okay. Well, they just used the word term there, which we assume Congress is not throwing away sort of established settled meanings of language and there's also a number of other structural. I'm sorry to speak over your honor. There's a number of other structural textual indications in the statute as well, speaking to the importance of government wide rules and the ability of our democratically accountable officials in Congress or the president to promulgate rules that will bind. The Congress itself has said and that principle of those things turn upon. If they don't kick in, this is another policy judgment that Congress made is that principle is balanced against the importance of allowing people to adhere to the importance of labor laws, allowing people to have the effect of what they mutually negotiated between workers and employers. And so that's why the statute also says that if an agreement is in effect, those policies don't kick in. So I don't, I don't know how saying there's policies. Now there's policies both way and Congress has drawn me a line on whether or not the changes kick in when the agreement is still in effect or not, which is why we talk about the term. The FLRA ever since the beginning of this statute has interpreted that time limited grandfathering provision quote unquote narrowly specifically because of the other important policy interests here, the rest of the CSRA, which delegates important policymaking to OPM and to others, the president's policymaking power, Congress's other statutes. These are all very important sources of authority. And for that reason, the FLRA has made clear there needs to be an express term that expires in order for new government wide rules. It has to be a calendar date, not an event. Well, a calendar date is by far the most common way of delineating terms. That may be debatable. I mean, the kind of the new contract that the FLRA assumes kicks in here does not have a calendar date ending. It ends up on the conclusion of a new collective bargaining agreement. So you've got the same issue either way. You're seeing policy arguments either way. So either you're not going to have one way or the other, you're not going to have a calendar date for the end of these continuance provisions. We're not here to say that an agreement of indefinite duration is impossible under this statute. We think continuance clauses are a permissible type of agreement under this statute. But I think it's important. I think the authority would be well within its power under this statute to say, well, if the parties have said that the agreement runs until a date certain, and then if there's still ongoing negotiations and nothing left in place, then something new has happened. The parties have already agreed that those are the conditions under which a new term will come into effect. And the authority is free to interpret the statutory term agreements to be coterminous with those terms in part because of the extreme importance of allowing Congress to regulate the conduct of federal employees rather than arbitrators in the impasses panel. Sorry, Judge Cazes, did I step on a question you had? No, I was just on that point. As to calendar date or event, I was just going to say it's every one of these clauses that I've looked at seems to be of general form, shall end on a date certain, which is a calendar, or the end of negotiations if a party has given timely notice, which is an event. So the heartland of what we're talking about is the contract term of the form, but the term of the contract is calendar event, calendar date, or completion of negotiations, whichever is later. So, Your Honor, I think in that circumstance, I heard my colleague from the FLRA say that the guidance here would apply. The reason the parties chose that calendar date is because it has important significance. I'm sorry, I thought you said it would not apply. I thought you repeatedly said if it said A or B, whichever comes later, then it wouldn't jump in until the later date. I think I heard her say in response to Judge Cazes' specific hypothetical from the CDC that the guidance would apply, but in any event... She was assuming that was not an A or B, whichever comes later. Right. In our view, I don't think or would be dispositive on that question at all. The reason the parties chose a specific calendar date is because it has meaning for them and it has meaning for us. For them, it triggers the preclusion of certain decertification challenges, which is very important for them. If they were to lose that, I don't think they would be happy. Second, for us, it creates a date certain by which Congress and the President and OPM can create new rules through democratically legitimate means to govern our federal employees. That's what What is the difference between the hypothetical A or B, whichever is later formulation, and the CDC provision, which I've read? They seem to me substantively identical. I can give it to you again if you don't have it handy. No, so I thought you said the specific language was, if renegotiation is in process but not completed upon expiration of this agreement, that's just the A date. So I think that that specific language is talking about A definitely being an expiration. I think in our view, the party's view as to whether it's an expiration or not is metaphysical and not important under the statutory interpretation question presented here. That statutory interpretation question doesn't give the parties the power to indefinitely forestall implementation of new government-wide rules. Sorry, hang on a sec. Sorry. I'm having a little trouble tracking this. I thought the authority's position was the guidance covers this actual Article 40, which I read, but does not cover the hypothetical A or B, whichever is later. And if that's true, there has to be some meaningful difference between the hypothetical formulation and this actual formulation. So I guess that's what I'm, and I don't see it. Those two seem to me just a variation on the same question. But if you want to defend, and if you want to say there's no difference and the guidance covers both, I understand that position, but I thought you were defending the distinction. No, Your Honor, I don't need to be defending that distinction. We don't think there is. And more importantly, I don't think this guidance on its face. Sorry. So civil appellate's position, to be clear, is that the guidance does cover the hypothetical A or B, whichever is later formulation. That's correct, Your Honor. And that's because this is a matter of statutory interpretation regarding the boundaries of agreements and terms. That's something the justified that. How do you square that with background contract principles? So I think you had an earlier question about whether there was a meeting of the minds and an agreement here. You might be going back to that. And so just to have it, you take it, take it either way. Judge Millett's formulation was that we're under the original expiration term of the original contract. My formulation was there's no second meeting of the minds to produce a second agreement. So you can take either one, but I haven't heard a great answer to either of those concerns. The meeting of the minds I'll take first. It is common ground between everyone here that if you have an agreement, say it's a ground rules agreement about how negotiations will be conducted for a new term agreement, the provisions of the ground rules set the conditions upon which there will be execution of the new agreement. So it's just common ground that provision of a prior agreement can set the conditions against which the parties act to execute a new agreement. That's the rule in that situation. It's also the rule in the case of I'm sorry, your honor. It's only if there's a new agreement though, right? Yes, your honor. Exactly. What's the new agreement? How, why does a new agreement arise when the triggering event is one party unilaterally says, I don't like this contract anymore and I want to renegotiate it. So the new agreement is the failure of both parties then to reach a new agreement during the bargaining period before the expiration of the prior term. That conduct read against the background rule established by the continuance provision is the execution. That's actually identical to the rollover circumstance where parties do nothing by a specific date and that is their, I saw you trying to make, ask another question, your honor. I'm sorry. Sorry. I keep, I keep interrupting you with my facial. No, please. I mean, in the rollover context, the rule is the contract will renew if neither party makes an objection and neither party makes an objection. And I can understand an argument that if that's the way the contract works and the deadline is approaching and party A says to itself, I have no objection. Party B says to itself, I have no objection. You can sort of think of that as an agreement by conduct. And if you can sort of think of that as a second agreement, you can maybe think of the extended term as a second agreement rather than the first. I just don't see how that works with extension where it's not both parties say to them, say the same thing, which is I'm fine with this continuing. It's one, one party says, I don't like this. And then there is a failure to reach a second agreement. So the failure to reach a second agreement before the end of the prior term, your honor, really is the result of both parties' conduct. It is possible to negotiate a new agreement before expiration. And even if the other side doesn't want that to happen, it's possible to advance impasses to the impasses panel and get a resolution. These are not impossibilities. And so it really is the course of conduct of both parties that leads to the continuance term being triggered. And to go back to the, so it's, sorry, your honor. So it's, the second agreement arises because the parties agree to disagree. I think that's, I think that's, I think that's right, your honor. But I also think that really is materially indistinguishable from the rollover context where literally the parties do nothing. That could be because they decide they want to have a new rollover term. It could be because everyone just forgot, but we still have a rollover term. And under longstanding precedent for 30 years that no one has questioned, including petitioners here, that's a new agreement. And if that course of conduct read against, yeah, which is consistent with hundreds of years of common law, which deems it a new agreement in the rollover context, but not a new agreement in the continuance context. So just to drill down further on that specific point, as we point out on page 31 of our brief, the rollover rule doesn't depend on the parties using magic words about renewal versus continuation that will remain in force. Either way, even if the rollover clause says this agreement will remain in force instead of this agreement shall be renewed, the rollover term is effective. It's a new term. There was a prior expiration date. What triggers rollover provisions is both parties independently concluding that I'm not going to ask for a negotiation. I'm just going to assume it's not that nobody's paying attention to these things. I think people pay attention to these things. So they make a conscious decision. I'm good with doing this again. And the other side, by not asking negotiations, makes that same conclusion. All right. And when a continuous provision is triggered by very different, it's not inaction, it is actually by very vigorous action. Negotiations in advance, as you said, they usually set different terms for what deadlines you have asked to describe before the designated A calendar date. And then you're in negotiations, and if the FLRA itself says that these things are stopgap measures, they don't have the confidence of either party when these things continue. It's just maintaining the status quo. And so that seems to me quite materially different between the two. I mean, you don't dispute with FLRA's description of these as stopgap measures in which neither party has full confidence because they're negotiating. Or at least one of the parties. Maybe one wants to keep it, but at least one of them doesn't. And we also know that if there have been intervening changes in statutes or regulations, the new CBA is going to have to take account of those. So there's going to be some recognition, but there's going to be some change, presumably, unless nothing has changed, at which point who cares? Right? So that's very different. It's the entire premise for why you're in this temporary stopgap time period. So you've described it as temporary, as we point out. To be clear, I'm quoting the FLRA, temporary stopgap. That's their term. For one, clearly the continuance term is finalized and has the confidence of the parties, otherwise it's not really an agreement, right? So it has force and no one disputes that the continuance clause itself has force. In that sense, it does have the party's confidence. They agreed to it at the very outset in the first agreement that led to the first term, and that in conjunction with the party's mutual failure to reach a new agreement before the expiration date, that's the execution. Execution here really is a term of art. Everyone recognizes that when the impasses panel imposes a settlement that neither party asked for, neither party wants, both hate them, and maybe even they don't want to sign them, that's execution. No one disputes that. It's a statutory term of art that takes into account the special context here of the government's specialized needs as recognized under 7101B of the statute. They need to interpret this statute consistent with an effective and efficient government, and that includes our ability to create and implement new government-wide rules. Yes, a continuous term is indefinite, but no, it's not... Am I right that these continuance provisions have been in effect for decades before this policy was issued? To my recollection, I've seen what I deemed, I think, are continuance provisions in quoted contracts in FLRA cases dating back to the early 90s. And it's pretty, as Judge Caps has said, pretty established in contract law generally. But again, I'm sorry, Your Honor. Mr. Beeson, if you could just maybe state a little more clearly, going back to Judge Caps' question earlier in this argument. So if we were to disagree with your view that this position is consistent with certain contract law principles, what is the best argument that the government should prevail here? I mean, if we think that this reading is not consistent with certain contract 101 principles. The statute here is using the word agreement in a way that's different from contract 101 principles. So I take it actually as being among the parties that the FLRA would have the power to interpret the word agreement here to disallow a forever agreement, an indefinite agreement with no known end date. But of course, I think under contract 101 principles, parties would be free to agree to such an agreement. So I think we know that we're dealing with something here that is not just subject to the whim of the parties in which the FLRA has no view as to what the boundaries of made clear, that the statute's definition of agreement is ambiguous and circular, and that the FLRA has therefore been given power by Congress to fill in the gaps to best effectuate the policies of the statute. That's what the FLRA did here. It balanced the important interests in labor stability during the first expressed term of an agreement against the government's also very important interests in having federal employees' conduct controlled by democratically accountable officials. And it reached a common sense resolution that is consistent with its rollover cases that have been around for at least 30 years and that no party challenges here. And it's consistent with the text and the structure of this statute. The statute, again, contemplates that agreements are coterminous with terms, which I think is actually a little bit different than perhaps what the common law might allow for. The common law doesn't require, you know, the chopping up an agreement into terms. It may or may not. But here, a term is an agreement. And the FLRA was well within its authority to say, if the parties go about specifying a specific end date in order to gain the benefits of, for example, displacing certification challenges for a period of time, then the parties should be bound by the idea that that really is meaningful for the parties outside of that context. It's the end of that term, regardless of whatever specific wordsmithing the parties might want to come up with in order to, you know, forestall implementation of government-wide rules for an additional time period. There was an expiration date. That date was reached. That's the entire reason why the continuance clause is triggered. I think the FLRA was within its authority to recognize that something new really has happened when that first date is reached, because it's only by reaching that first date that the continuance clause was triggered in the first place. It's not as if nothing happened here. And, I'm sorry, Your Honor. Do my colleagues have any more questions? Okay, thank you. Thank you very much. And we need, Ms. Bailey, I think you have two minutes of rebuttal. Yes. Thank you, Your Honor. I'd really like to make one simple point, which is, if the parties want their contracts to end on the calendar date listed in the contract, they don't need to include a continuance provision. If they don't include a continuance provision, that calendar date will be the expiration of the agreement. I'd be glad to answer any other questions from the Court. Otherwise, we'll rest on our briefs. Questions? Okay. Well, thanks to everybody. Now the case is submitted.
judges: Millett, Katsas, Rao